IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES MARTINEZ,<br><br>    Petitioner,<br><br>  v.<br><br>A. P. KANE, Warden,<br><br>    Respondent. | No. C 05-3429 WHA (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. The petition is directed to denial of parole.

The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set forth below, the petition is **DENIED**.

**STATEMENT**

Pursuant to a plea bargain, petitioner pled nolo contendere to second degree murder with personal use of a handgun and on March 6, 1987, was sentenced to prison for fifteen years to life (Exh. 1).[1]

On December 4, 2003, after a hearing before the Board of Prison Terms ("Board"), during which petitioner was represented and was given an opportunity to be heard, the Board found petitioner unsuitable for parole (Exh. 2 at 46-50). The Board based its decision upon the

---

[1] Citations to "Exh." are to the exhibits attached to respondent's answer.

1 viciousness of the offense; the triviality of the motive; his escalating pattern of criminal
2 activity; his unstable social history; his having been on probation at the time of the crime; his
3 failure to adequately participate in self-help programs, as shown by his lack of knowledge of the
4 "twelve steps;" the psychologist's conclusion that his potential for violence was slightly higher
5 than average; and his counselor's conclusion that his potential for violence was "moderate."
6 (*Ibid.*)

## DISCUSSION

**A.  STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or

incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**B.   ISSUES PRESENTED**

**1.   BREACH OF PLEA BARGAIN**

Petitioner contends that his plea bargain has been breached in that (1) he is being treated as if he had been convicted of first-degree murder, rather than second-degree; (2) he has not been paroled at the earliest possible time; and (3) he has not served his time out-of-state.

**a.   STATUTE OF LIMITATIONS**

Respondent contends that petitioner's plea bargain claims are barred by the statute of limitations. Petitions filed by prisoners challenging non-capital state convictions or sentences must be filed within one year of the latest of the date on which: (A) the judgment became final after the conclusion of direct review or the time passed for seeking direct review; (B) an impediment to filing an application created by unconstitutional state action was removed, if such action prevented petitioner from filing; (C) the constitutional right asserted was recognized

3

by the Supreme Court, if the right was newly recognized by the Supreme Court and made retroactive to cases on collateral review; or (D) the factual predicate of the claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1).

Breach of a plea bargain can be a due process violation and a basis for habeas relief. *See Santobello v. New York*, 404 U.S. 257, 262 (1971). The triggering date for the statute of limitations was when "the factual predicate of the claim could have been discovered through the exercise of due diligence." *See* 28 U.S.C. § 2244(d)(1)(4). Petitioner could have discovered through the exercise of due diligence that he was not being housed out-of-state shortly after he was put in a California prison, rather than one out of state, roughly eighteen years before this petition was filed, and he could have discovered that he was not being given parole at the earliest possible date in April of 1995, at the latest, which was his minimum eligible parole date (Exh. 11). Both dates are far more than one year before this petition was filed, and the record does not show any basis for tolling, statutory or equitable. The breach of plea bargain claims are barred by the statute of limitations.

        **b.**    **MERITS**

The plea agreement was that the court would "recommend" that he serve his time out-of-state, and that it would "recommend" that he be paroled at the earliest possible time (Exh. 10 at 2). This is exactly what the court did -- it made those recommendations (Exh. 1). There was no breach as to these points.

Petitioner also claims that the plea bargain is being breached because he is being treated as if he had been convicted of first-degree murder, rather than the second-degree charge to which he pleaded. The plea bargain called for a sentence of fifteen years to life (Exh. 10 at 3), and that is what petitioner received (Exh. 1). Although plaintiff contends he is being punished as if he had pleaded to first-degree murder, he in fact is receiving the parole considerations to which his fifteen-to-life sentence entitles him. First degree murder is punishable by death, life without parole, or a term of twenty-five years to life. Cal. Penal Code § 190(a). If petitioner had been convicted of first-degree murder, he would not even yet be receiving consideration for parole.

4

Petitioner's contention that his plea bargain was breached is without merit. The state courts' rejection of petitioner's argument was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

### 2. SUFFICIENCY OF THE EVIDENCE

Petitioner contends that there was not sufficient evidence to support the finding that he is not yet suitable for parole. Respondent contends that petitioner has no liberty interest in parole, so is not entitled to due process, or that if he is so entitled, due process is satisfied by his having been given an opportunity to be heard and an explanation why parole was denied. That is, they contend there is no due process right to a decision which is supported by sufficient evidence, the gravamen of petitioner's claim. They also contend that there was sufficient evidence to support the decision.

#### a. DUE PROCESS

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1.

In *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979), the Supreme Court found that the inmates had a liberty interest in discretionary parole that was protected by the Due Process Clause. The right was created by the "expectancy of release provided in [the Nebraska parole statute.]" That statute provided that the parole board "shall order" release of eligible inmates unless that release would have certain negative impacts. *Id.* at 11–12. The Supreme Court returned to the issue in *Board of Pardons v. Allen*, 482 U.S. 369 (1987). There it held that a similar liberty interest was created even though the parole board had great discretion. *Id.* at 381. For parole decisions, this mode of analysis survived the Supreme Court's later rejection of it for prison disciplinary decisions in *Sandin v. Conner*, 515 U.S. 472 (1995). *Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003) (*Sandin* "does not affect the creation of liberty interests in parole under *Greenholtz* and *Allen*.").

While there is "no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," *Greenholtz v. Inmates of Nebraska Penal & Corr. Complex*, 442 U.S. 1, 7 (1979), a state's statutory parole scheme, if it

5

1  uses mandatory language, may create a presumption that parole release will be granted when or
2  unless certain designated findings are made, and thereby give rise to a constitutionally protected
3  liberty interest, *see Board of Pardons v. Allen*, 482 U.S. 369, 376-78 (1987) (Montana parole
4  statute providing that board "shall" release prisoner, subject to certain restrictions, creates due
5  process liberty interest in release on parole); *Greenholtz*, 442 U.S. at 11-12 (Nebraska parole
6  statute providing that board "shall" release prisoner, subject to certain restrictions, creates due
7  process liberty interest in release on parole). In such a case, a prisoner has liberty interest in
8  parole that cannot be denied without adequate procedural due process protections. *See Allen*,
9  482 U.S. at 373-81; *Greenholtz*, 442 U.S. at 11-16.

10  Respondent contends that California law does not create a liberty interest in parole. But California's parole scheme uses mandatory language and is similar to the schemes in *Allen* and *Greenholtz* which the Supreme Court held gave rise to a protected liberty interest in release on parole. In California, the panel or board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b). Under the clearly established framework of *Allen* and *Greenholtz*, "California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002). The scheme requires that parole release be granted unless the statutorily defined determination (that considerations of public safety forbid it) is made. *Ibid.*; *Biggs v. Terhune*, 334 F.3d 910, 915-16 (9th Cir. 2003) (finding initial refusal to set parole date for prisoner with fifteen-to-life sentence implicated prisoner's liberty interest). In sum, the structure of California's parole scheme -- with its mandatory language and substantive predicates – gives rise to a federally protected liberty interest in parole such that an inmate has a federal right to due process in parole proceedings.

Respondent relies on *In re Dannenberg*, 34 Cal. 4th 1061 (Cal.), *cert. denied*, 126 S. Ct. 92 (2005), as authority for his contention that the California statute does not create a liberty

6

interest in parole. This argument has been rejected by the United States Court of Appeals for the Ninth Circuit. *See Sass v. California Bd. of Prison Terms*, 461 F.3d 1127-28 (2006).

Respondent's argument as to liberty interest is without merit.

Respondent also contends that there is no due process requirement as to the quantum of evidence necessary to support a parole denial. He is incorrect.

The Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record", or is "otherwise arbitrary." *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985)); *McQuillion*, 306 F.3d at 904 (same). The evidence underlying the Board's decision must also have "some indicia of reliability." *McQuillion*, 306 F.3d at 904; *Biggs*, 334 F.3d at 915. The some evidence standard identified in *Hill* is clearly established federal law in the parole context for purposes of § 2254(d). *See Sass*, 461 F.3d at 1128-1129.

### b.     MERITS

The question of whether there was "some evidence" to support the Board's decision thus must be reached. Ascertaining whether the some evidence standard is met "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455; *Sass*, 461 F.3d at 1128. The some evidence standard is minimal, and assures that "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary." *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).

Recent Ninth Circuit cases reflect that a critical issue in parole denial cases is the Board's use of evidence from the commitment offense and prior offenses. In *Biggs*, the court explained that the some evidence standard may be considered in light of the Board's decisions over time. *Biggs*, 334 F.3d at 916-917. The court reasoned that "[t]he Parole Board's decision is one of 'equity' and requires a careful balancing and assessment of the factors considered . . . A continued reliance in the future on an unchanging factor, the circumstance of the offense and

7

conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." *Id.* Although the *Biggs* court upheld the initial denial of a parole release date based solely on the nature of the crime and the prisoner's conduct before incarceration, the court cautioned that "[o]ver time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of his offense would raise serious questions involving his liberty interest." *Id.* at 916.

The *Sass* court criticized the decision in *Biggs*: "Under AEDPA it is not our function to speculate about how future parole hearings could proceed." *Sass*, 461 F.3d at 1129. *Sass* determined that it is not a due process violation per se if the Board determines parole suitability based solely on the unchanging factors of the commitment offense and prior offenses. *See id.* (prisoner's commitment offenses in combination with prior offenses amounted to some evidence to support the Board's denial of parole). However, *Sass* does not dispute the argument in *Biggs* that, over time, a commitment offense may be less probative of a prisoner's current threat to the public safety.

In *Irons* the Ninth Circuit emphasized the continuing vitality of *Biggs*, but concluded that relief for Irons was precluded by *Sass*. *See Irons*, 470 F.3d at 664. The Ninth Circuit explained that all of the cases in which it previously held that denying parole based solely on the commitment offense comported with due process were ones in which the prisoner had not yet served the minimum years required by the sentence. *Id.* at 665. Also, noting that the parole board in *Sass* and *Irons* appeared to give little or no weight to evidence of the prisoner's rehabilitation, the Ninth Circuit stressed its hope that "the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from relevant California statutes." *Id.* (citing *Biggs*, 334 F.3d at 917). Even so, the Ninth Circuit has not set a standard as to when a complete reliance on unchanging circumstances would amount to a due process violation.

That is not what happened here, however.

8

The Board based its decision upon the viciousness of the offense; the triviality of the motive; petitioner's escalating pattern of criminal activity; his unstable social history; his having been on probation at the time of the crime; his failure to adequately participate in self-help programs, as shown by his lack of knowledge of the "twelve steps;" the psychologist's conclusion that his potential for violence was slightly higher than average; and his counselor's conclusion that his potential for violence was "moderate." (Exh. 2 at 46-50.) The Board did not deny parole solely because of the unchanging factor of the nature of petitioner's offense, so the concern expressed in *Biggs*, that after passage of enough time such a factor would cease to be "some evidence," is not triggered here. In addition to the nature of the offense, which in particular with regard to petitioner's being on probation when he committed it is itself "some evidence," there was the psychologist's report saying that petitioner might have a slighter higher potential for violence than the average person, petitioner's lack of knowledge of the twelve-steps despite having supposedly participated in several twelve-step programs, and his counselor's conclusion that his potential for violence was "moderate."

There was sufficient evidence to support the denial. *See Rosas v. Nielsen*, 428 F.3d 1229, 1232–33 (9th Cir. 2005) (facts of the offense and psychiatric reports about the would-be parolee sufficient to support denial). Because there was no constitutional violation, the state courts' denial of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court authority.

## CONCLUSION

The petition for a writ of habeas corpus is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September __18__, 2007.

_____
WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.05\MARTINEZ429.RUL.wpd

9